UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: BIOMET M2A MAGNUM HIP IMPLANT PRODUCTS LIABILITY LITIGATION (MDL 2391) | ) ) ) ) ) ) ) | CAUSE NOS. 3:12-CV-0614-RLM-CAN<br>3:14-CV-0737-RLM-CAN<br>3:14-CV-1266-RLM-CAN<br>3:14-CV-1434-RLM-CAN<br>3:14-CV-1505-RLM-CAN |

OPINION and ORDER

Five plaintiffs in this MDL docket believe they settled with Biomet pursuant to a master settlement agreement. Biomet disagrees.

Three plaintiffs have presented the issue before, and have filed identical motions for reconsideration (No. 3:14-CV-737, No. 3:14-CV-1434, and No. 3:14-CV-01505). They ask me to reconsider my March 23, 2015 order denying the plaintiffs' motions to enforce the settlement agreement.

The three plaintiffs in these cases – George Holmes, Rita Taranto, and Griseth DeJesus – timely notified Biomet of their intention to participate in the Master Settlement Agreement. Biomet exercised its right under ¶ 3(b) of the Master Settlement Agreement to dispute the amount of compensation payable to these plaintiffs in November 2014. On December 1, Biomet changed its mind and sent plaintiffs' counsel an email saying that after further consideration, Biomet would "agree to resolve" the cases of Mr. DeJesus and Ms. Taranto for a set

amount of money.[1] The email also discussed a value for Mr. Holmes's case but didn't make a concrete offer to settle. The plaintiffs' counsel responded with a counter-offer to settle Mr. Holmes's claim, to which John Winter (Biomet's counsel) replied: "Ok to resolve at $[redacted]K." The parties presented no evidence of what response – if any – plaintiffs' counsel made to Biomet's offers to settle the cases of Ms. Taranto and Mr. DeJesus.

Meanwhile, another client of plaintiffs' counsel was engaged in a discovery dispute with Biomet in Florida state court. Biomet believed that the plaintiffs' counsel was using the Florida discovery dispute and the costs it imposed on Biomet as leverage to settle these three cases, and on January 6, 2015 notified the plaintiffs' counsel that if he didn't accept Biomet's position on the Florida discovery issue, Biomet would "revoke any settlement offers previously discussed." When the plaintiffs' counsel declined, Biomet revoked by email its offers to settle these three cases. Plaintiffs' counsel sent Biomet executed settlement agreements in these cases the next day, but Biomet responded that the offers had already been revoked.

These plaintiffs moved to enforce the purported settlement agreement, arguing that a binding contract existed as to all three cases prior to Biomet's revocation email on January 6. I held a hearing on the three motions to enforce

---

[1] This amount is redacted in the exhibits the plaintiffs submitted with the motion to enforce, so the court can't compare it to the original amount available to plaintiffs under the Master Settlement Agreement.

on March 17, 2015. At the hearing, plaintiffs took the position that Biomet's December 1 email "finishes the offer and acceptance scenario" as to Ms. Taranto and Mr. DeJesus because Biomet expressed an intention to settle those cases. The plaintiffs also argued that Biomet's email response – "Ok to resolve at $[redacted]K" – constituted Biomet's acceptance of plaintiffs' offer to settle Mr. Holmes's case for an agreed price. I questioned Erin Hanig (Biomet's counsel) about the communications in these cases, and she responded as follows:

> MS. HANIG: So in these three cases, there was a discussion about offers and numbers, but those offers were then revoked on January 6th, and the releases, which would have consummated those agreements, were not signed and returned until January 7.
>
> THE COURT: But the offers had been accepted in December; is that correct?
>
> MS. HANIG: No.
>
> THE COURT: I'm not asking whether that finalized things. But they had been accepted?
>
> MS. HANIG: Well, there was a discussion on that amount, but the point of the actual agreement being consummated would have been the release being signed.
>
> THE COURT: I understand, but it's hard for me to really –
>
> MS. HANIG: Yes, there were e-mails to that effect in December
>
> THE COURT: Okay.

(March 17, 2015 Hearing Transcript, at 7-8). I denied the motions to enforce in a written opinion on March 23, 2015, and the plaintiffs moved for reconsideration.

Federal Rule of Civil Procedure 54(b) governs motions to reconsider interlocutory orders. This Rule provides that any order that does not resolve all claims as to all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); s*ee* Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983) (holding that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting Keene Corp. v. Int'l Fidelity Ins. Co., 561 F. Supp. 656, 665 (N.D. Ill. 1982), aff'd, 736 F.2d 388 (7th Cir. 1984)). A manifest error of law or fact under this standard occurs when a district court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motion to reconsider should be equally rare." Id.

The plaintiffs argue that reconsideration is necessary here because my order turned on an issue not briefed by the parties, and in light of this lack of briefing my ruling on the issue was contrary to Indiana law. As the plaintiffs understand it, the parties disputed only whether an agreement existed and believed that the resolution of that dispute would be dispositive; if an agreement

existed the plaintiffs would win, and if no agreement existed Biomet would win. They say that at the hearing, Biomet conceded that an agreement existed – and I agreed in my written order – but I went on to hold that Biomet revoked the agreement before it was "finalized" and so wasn't bound. The plaintiffs now move for reconsideration and point to Indiana authority holding that a party can't revoke a valid agreement after acceptance of an offer.

It's not necessary to consider the contract law point that the plaintiffs raise, because their argument depends on two flawed premises: that Biomet admitted at the hearing that an agreement existed, and that I found such an agreement existed but denied the motions to enforce under the mistaken belief that an agreement can be revoked after acceptance of an offer.

The plaintiffs contend – as they did at the hearing – that the December 1 email in which Biomet withdrew its challenge to the value of Ms. Taranto's and Mr. DeJesus's claims created a binding obligation because it completed the "offer and acceptance scenario" as to those two plaintiffs. (March 17, 2015 Hearing Transcript, at 3). For that to be true, the plaintiffs' initial attempt to join the Master Settlement Agreement must be construed as an offer that Biomet then accepted. Even if that attempt was an offer, however, Biomet rejected it by contesting the compensation amount. Once an offer is rejected, it is terminated and can no longer be accepted. *See* Restatement (Second) of Contracts, § 38 ("An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention…A manifestation of intention not

to accept an offer is a rejection unless the offeree manifests an intention to take it under further advisement."). Even if Biomet later changed its mind and purported to accept the original offer to settle, that offer no longer existed. Biomet's December 1, 2014 email is properly understood not as an acceptance but as a counteroffer, and the parties provided no evidence to suggest that the plaintiffs ever explicitly accepted this counteroffer. Any "admission" made by Biomet at the hearing would be of no legal import – no contract existed.

Moreover, Biomet never admitted at the hearing that an agreement existed in December. Ms. Hanig's statement are not, contrary to the plaintiff's characterization, an admission that an agreement existed after the emails were exchanged. When I asked Ms. Hanig if the offers to settle had been accepted in December, she replied "No." In the exchange that followed, she emphasized that no "actual agreement" had been "consummated" but said that "there were e-mails to that effect in December." Ms. Hanig's statement that there were "e-mails to that effect" is ambiguous; it's not clear from context precisely what she understood "to that effect" to mean, and I hadn't finished the question she was evidently answering. This statement isn't clear enough to contradict her earlier, unambiguous denial that an offer had been accepted in December.

Even if Biomet had admitted that an agreement existed, reconsideration wouldn't be appropriate here because plaintiffs are also incorrect that my order denying the motions to enforce "turned on the particular issue of whether a litigant in Indiana may revoke an offer after it is accepted but before the closing

documents are finalized." The only portion of the order plaintiffs cite in support of their reading is an isolated statement that "the settlement agreements weren't finalized before they were revoked on January 6, 2015." (March 23, 2015 Order, at 5). From that isolated statement, the plaintiffs extrapolate that: (1) I must have found that an agreement existed, and (2) that I must have reached a legal conclusion that Biomet was empowered to revoke an agreement after its creation.

In my statement, "finalized" was shorthand for the familiar contract principle of a meeting of the minds. Other portions of the order make clear that no binding settlement agreement existed such that Biomet was not free to withdraw its offers and walk away. As I hoped my order made clear, the Master Settlement Agreement conditioned settlements on a plaintiff providing Biomet with a "Settlement Agreement and Covenant not to Sue." (Doc. No. 1317-1). This provision of the contract is evidence that Biomet didn't intend to be bound unless and until a plaintiff submitted the proper paperwork; merely communicating to Biomet an intention to take advantage of the Master Settlement Agreement's terms wasn't enough to create a binding, enforceable obligation.

Similarly, Biomet's response regarding the value of Mr. Holmes's case didn't convey that the dispute was resolved, only that it was "Ok to resolve" at a given price. This phrasing suggests that Biomet didn't intend to be bound at that time, but that it intended to cooperate in reaching an agreement at that value later. "The law is well established that a mere agreement to agree at some future time is not enforceable." Wolvos v. Meyer, 668 N.E.2d 671, 674 (Ind. 1996) (citing

Wallace v. Mertz, 86 Ind. App. 185, 156 N.E. 562 (1927)). Biomet had revoked its settlement offer by the time the plaintiffs delivered their settlement agreement forms, so no enforceable agreement existed between the parties.

No binding agreement existed as a result of the parties' exchange of emails, Biomet made no admissions to the contrary at the hearing, and my denial of the motions to enforce didn't find that such an agreement existed. Accordingly, I deny the plaintiffs' motions for reconsideration.

Plaintiffs in two other cases – Youshawnenone Harris and Kevin Harris, (No. 3:14cv1266) and Kelly Chadwick (No. 3:12cv614) have filed motions based on similar allegations regarding Biomet's obligations under the Master Settlement Agreement: essentially, both claim that Biomet improperly reduced their settlement award after they exercised their right under the Master Settlement Agreement to seek an enhanced award. Mrs. Harris seeks enforcement of the Master Settlement Agreement while Ms. Chadwick seeks an award of damages for Biomet's alleged breach of the agreement; otherwise, the motions are largely similar.

Mrs. Harris's facts are quite unusual. She had a Biomet M2a Magnum device implanted on March 10, 2009; she then underwent revision surgery on May 15, 2012 in Germany to remove the Magnum and underwent a second revision surgery on September 30, 2013 in Hawaii that she says was also the result of the failure of the Magnum. Mrs. Harris sought an enhancement after being categorized as a base award case.

The Hawaiian surgeon referred to Mrs. Harris' surgery in Hawaii as her "third revision." He later corrected his statement in an affidavit by clarifying that he was referring to her third *hip surgery* and had included the initial implantation in the count. Regardless, Biomet believes that Mrs. Harris must have had another revision surgery (before the Germany one) in which her Biomet hip was explanted. Biomet claims this surgery would have taken place at a time that would make her complaint untimely under the two-year statute of limitations. Biomet challenged the value of Mrs. Harris' award and offered her a considerably lower amount. The parties proceeded to mediation but didn't reach agreement.

Ms. Chadwick's facts are more straightforward: she had a Biomet M2a Magnum device implanted on September 26, 2005; she underwent her first revision surgery on June 10, 2010 and has since had four more revision surgeries on that hip. Ms. Chadwick sought an enhancement after being categorized as a base award case. Biomet claims Ms. Chadwick's hip failed because she was excessively active. Biomet challenged the value of her award and offered her a lower amount. Mediation was scheduled, but when Ms. Chadwick was told that Biomet's position wouldn't materially change at mediation, she didn't proceed with the mediation.

Mrs. Harris claims she qualified for a settlement award, but Biomet refused to honor the terms of the agreement and challenged her case in bad faith. She asks that I order Biomet to consider her a plaintiff eligible for the base award

and to negotiate with her in good faith for an enhanced award. Biomet says the parties never reached a meeting of the minds on the settlement value of Mrs. Harris' case, so no agreement exists between the parties for me to enforce. Ms. Chadwick, too, claims she qualified for a settlement award, but Biomet breached the Settlement Agreement when it challenged her case simply because she had sought enhanced compensation. Biomet says Ms. Chadwick didn't proceed to mediation, so no agreement exists between the parties for the court to enforce.

Paragraph 2(d) of the Master Settlement Agreement tells a plaintiff to first categorize his or her case based on the agreement's guidelines. Next, Biomet informs the plaintiff of any disagreement with that categorization. Then, if the parties still disagree as to the value of the case, they proceed to mediation. Paragraph 3 outlines two general types of mediation cases: when plaintiffs believe good cause exists that entitles them to enhanced compensation; and/or when Biomet believes good cause exists to reduce the award. Under paragraph 4, cases in which the parties disagree about whether the statute of limitations bars the claim are also subject to mediation. Paragraph 3 says the parties agree to "confer in good faith" during the mediation process, and if the parties aren't able to reach an agreement at mediation, the case will be remanded when the court so orders.

In response to the discovery request of Ms. Chadwick's attorney Gregg Borri, the parties discussed her case at the May 18 status conference. Biomet and the original Plaintiff's Steering Committee asserted that Mr. Borri

misunderstood the settlement agreement. Co-lead counsel for the plaintiffs Thomas Anapol told the court, "The fundamental understanding between the parties when the deal was struck was that if people come and seek enhancement in these cases, all bets are off. . . . We . . . notified everybody in Group 1 and Group 2 that you need to be very mindful and careful in seeking enhancements because Biomet was going to take a closer look at the records in those instances, so everybody should have had open eyes with respect to seeking enhancement for that very reason." (May 18, 2015 Hearing Transcript p. 16). Mr. Winter told the court, "We were very clear when we negotiated this that Biomet would say, "You get a base award, and we won't discount obesity, smoking, or age. But if you want more than the base award, we are going to challenge that to take that into account, and, in addition, we have a right to contest cases where we think it's appropriate to contest. Pursuant to . . . the settlement, and that's what we did." (May 18, 2015 Hearing Transcript p. 17-18).

I concluded at that point that Biomet's practice wasn't inconsistent with the settlement agreement and wasn't done in bad faith. I declined Mr. Borri's discovery request.

Both Mrs. Harris and Ms. Chadwick dispute whether Biomet had good cause to challenge their categorization. The Settlement Agreement explicitly allows the parties to disagree about the categorization of a case and directs them to mediation when such a disagreement occurs. The agreement defines the good cause needed for Biomet to seek to reduce the amount to be paid to a specific

-11-

plaintiff as including (but not being limited to) evidence of trauma, infection, or other objective explanations for premature failure of the hip system with the absence of evidence of a metal on metal injury. In other cases, I have directed the parties to rely on the mediator to determine whether "good cause" exists for an enhancement or a deduction. I have offered a limited definition of "good cause" under the agreement – subjective rather than objective, and not limited to the examples set out in ¶ 3(b). Likewise, I have been reluctant to interfere with the parties' interpretation of the settlement agreement in individual cases. *See* 3:14-cv-1112, Doc. No. 35; 3:13-cv-142 Doc. No. 86.

It would be inappropriate to shift gears after others have received those rulings; consistency is one of the purposes of the MDL process. Whether these specific circumstances warrant "good cause" to reduce the award is a question for the mediator under the Master Settlement Agreement.

Both Mrs. Harris and Ms. Chadwick claim Biomet challenged their cases in bad faith. Under paragraph 3(c), the parties agreed to "confer in good faith" during the mediation process.

Mrs. Harris proceeded to mediation but couldn't resolve her case. She claims Biomet refused to negotiate at the mediation and didn't listen to the mediator. Her counsel says that Biomet's counsel told him: (1) that he was singled out because a post on his firm's website compared the Biomet hip to the recalled DePuy hip and Biomet's message to him was to "drop dead," and (2) that in general, mediation wouldn't result in increased or reduced offers. Ms. Harris

argues that Biomet is punishing plaintiffs for exercising their rights under the contract, which directs them, if they believe they are eligible, to seek an enhancement.

Ms. Chadwick chose to forego mediation that her counsel deemed futile. After mediation was scheduled for January 27, 2015, Mr. Borri says Mr. Winter told him that Ms. Chadwick had been too active in her recreational activities. He says Mr. Winter offered her a fraction of the base award amount and told him that Ms. Chadwick would receive the same offer at mediation.[2] Mr. Borri says that he learned from PSC 1 and the mediator's office that relatively few mediations had taken place, the mediator had been largely unable to influence Biomet's settlement offers in the mediations that had occurred, and few (if any) enhancements had resulted from mediation. Ms. Chadwick also claims Biomet is engaging in a strategy to punish plaintiffs who sought enhancements.[3]

Biomet argues that it had valid reasons to contest these cases, and that the plaintiffs' attorneys misunderstood the settlement agreement. Mr. Borri

---

[2] Mr. Borri submits an email from Mr. Winter to attorney Ilyas Sayeg, who also sought enhancements for his clients, that says "Biomet's position at mediation on these cases is not going to materially change." Attorney Lowe, who sought an enhancement for his client, told the court at the May 18 hearing that he received an email from Mr. Winter that said, "You can formally mediate these cases in Philadelphia, if you want, but you should know that Biomet's position regarding their value isn't going to materially change." (May 18, 2015 Hearing Transcript p. 14). As a result, Mr. Lowe didn't proceed with the mediation.

[3] Mr. Borri claims that when he voiced his concerns to the PSC 1, they told him they didn't intend to pursue the issue because they would soon be resigning their leadership positions.

claims that any implicit understanding of the settlement agreement is inconsistent with the statements the PSC 1 made in their emails to plaintiffs' counsel.

Mr. Borri attached to Ms. Chandwick's reply copies of the emails from PSC 1 co-lead counsel Mr. Anapol and Mark Lanier to the plaintiffs' attorneys. The February 4 and May 16, 2014 emails didn't contain any warning about the enhancements (although they cautioned attorneys against statute of limitations cases). But the May 19 email warned counsel that Biomet would closely scrutinize enhancement cases. It stated, "Enhancement is meant for cases where the underlying case is strong and the plaintiff suffered significant additional damages other than the revision surgery. . . . Be mindful that when you seek an enhanced award, we expect the Defendant to raise certain challenges it is generally leaving out regarding the base award." Biomet says 82 cases were formally mediated; 50 of those were resolved, which equals a 60 percent success rate. The rate is 85 percent for everyone other than three firms who resolved none of their claims at mediation.

In light of my earlier holdings that Biomet's practice – responding to enhancement requests with withdrawal of the base award, a firm offer of a smaller award, and a refusal to negotiate at mediation – doesn't constitute bad faith, Ms. Chadwick's motion is denied.

Mrs. Harris's situation has an extra wrinkle. A physician referred to an earlier revision surgery. If that's true, she faces a difficult statute of limitations

obstacle. She says the physician simply made a mistake, and she says so pretty convincingly. She presents the physician's affidavit saying that his previous remark was essentially a scrivener's error. But the physician's original statement remains for Biomet to use. Given the conflicting statements, resolution requires a fact-finder, and I can't perform that role. For this reason, and for the reasons discussed with respect to Ms. Chadwick's motion, I must deny Mrs. Harris's motion.

For these reasons, the court DENIES the motions to reconsider (Doc. No. 41 in No. 3:14-CV-737, Doc. No. 47 in No. 3:14-CV-1434, and Doc. No. 46 in No. 3:14-CV-01505), the motion to enforce the settlement agreement in No. 3:14-CV-1266, and the motion for award of damages for breach of the settlement agreement in No. 3:12-CV-614.

SO ORDERED.

ENTERED: January 27, 2016

/s/ Robert L. Miller, Jr.
Judge
United States District Court