UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: BIOMET M2A MAGNUM HIP IMPLANT PRODUCTS LIABILITY LITIGATION (MDL 2391) | ) ) ) ) | CAUSE NOS. 3:14-CV-1434-RLM-CAN 3:14-CV-1505-RLM-CAN 3:13-CV-1359-RLM-CAN |

OPINION and ORDER

Plaintiffs Rita Taranto, Griseth DeJesus, and Chanton Harris all brought separate suits in Florida state court alleging that defects in their M2-a Magnum hip implants injured them. All three plaintiffs have filed motions to remand their cases to state court, raising similar issues. Also before the court are Biomet's motion to sever dispensable defendants (filed in each of the three cases) and motions by each of the three plaintiffs for a protective order and stay. Finally, two other motions by Ms. Harris must be resolved before reaching her remand arguments: a motion to substitute defendants in her complaint, and a motion to lift the stay in effect as to her other pending motions.

For the reasons that follow, I deny Biomet's motion to sever in all three cases, grant Ms. Harris's motions to substitute parties and to lift the stay, and grant the plaintiffs' motions to remand. Because the cases will be remanded to the Florida courts, the three motions for protective orders and stays are moot.

I. BACKGROUND

The three plaintiffs share similar factual backgrounds and procedural postures for purposes of these motions. The plaintiffs all had hip replacement surgeries in which their doctors implanted Biomet M2a-Magnum hip replacement components. The implants eventually failed, and the plaintiffs had to have revision surgery. Each plaintiff then independently filed suit in state court in Florida, alleging negligence, failure to warn, strict product liability, and breach of express and implied warranties.

The plaintiffs all sued Biomet Inc. and Biomet Orthopedics LLC, two Biomet entities involved in designing, manufacturing, and selling the hip implants. Each plaintiff also named as defendants the people and companies who distributed their hip implants on Biomet's behalf: Ms. Taranto named Orthopedics Inc., James H. Barr, Orthodynamics Inc., and Paul Haber; Ms. DeJesus named Orthodynamics Inc., Paul Haber, Henry Riestra, Orthopaedic Resource Inc., Michael Trieste, and Walter Floyd; and Ms. Harris named Orthopaedic Resource Inc. and Orthopedics, Inc. I will refer to the non-Biomet defendants collectively as "Distributors." The complaints allege that the Distributors had an agreement with Biomet to help market and sell the Magnum hip implant system to the plaintiffs' doctors.

For diversity purposes, the three plaintiffs and the Distributors are citizens of Florida, while the two Biomet defendants are not. The defendants removed all three cases to Florida federal courts based on diversity of citizenship under 28 U.S.C. § 1446, arguing that complete diversity existed notwithstanding the

Florida citizenship of the Distributors because the Distributors were fraudulently joined. The Judicial Panel on Multidistrict Litigation transferred the cases into the Biomet multi-district litigation docket, and the plaintiffs now ask me to remand to the Florida state courts where the suits were originally filed.

II. DISCUSSION

Before reaching the merits of the remand motions and the motions to sever dispensable defendants, I must resolve Ms. Harris's motions to lift the stay on her case and to amend her complaint by substituting defendants.

When Biomet removed Ms. Harris's case to federal court, the notice of removal included affidavits establishing that the Distributors named in Ms. Harris's complaint couldn't have been responsible for her hip implant – at the time of her original 2006 implantation surgery, neither Orthopaedic Resource, Inc. nor Orthopedics, Inc. did business in Sarasota County, Florida at all. Because the two Distributors named in Ms. Harris's complaint couldn't have had anything to do with her hip replacement, Biomet argued that they had been fraudulently joined simply to defeat diversity jurisdiction and keep the case in state court.

Four days after the notice of removal, Ms. Harris moved to amend her complaint to replace Orthopaedic Resource, Inc. and Orthopedics, Inc with what she now understood to be the Florida-based Distributors who actually provided her implant, Paul Haber and Orthodynamics, Inc. Ms. Harris then filed her

motion to remand, arguing that joinder wasn't fraudulent once the correct Distributors were substituted and that immediate remand was necessary to prevent her case being transferred into this MDL. Biomet opposed the motion, and the case was transferred to this court before the Middle District of Florida ruled on either of Ms. Harris's pending motions.

Once the case became part of the Biomet MDL, the parties filed supplemental briefing reaffirming their positions on both remand and substitution of the new Distributors. The parties indicated they were discussing settlement and would like to stay consideration of the two pending motions; I granted the motion and stayed the case pending settlement. Settlement discussions didn't bear fruit, and Ms. Harris now asks me to lift the stay and rule on her motion for leave to substitute parties.

A. Ms. Harris's Motion to Lift the Stay

Ms. Harris requested the stay because the parties were in serious settlement discussions; now that those discussions have proven unsuccessful there is no reason to continue the stay. Biomet argues that maintaining the stay would promote judicial efficiency because it will ensure that this case remains in the MDL with five other cases belonging to Ms. Harris's lawyers.

The motions that are stayed call into question this court's jurisdiction to preside over Ms. Harris's. If, as Ms. Harris argues, diversity of citizenship is lacking, no federal court has subject matter jurisdiction and remand of the case

is mandatory. Now that the case is prepared to move forward again, I can't keep it in this MDL and proceed any further without addressing subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 556 U.S. 662, 671 (U.S. 2009). Ms. Harris's remand motion puts the court's subject matter jurisdiction fairly in doubt, the practical considerations of judicial economy and efficiency that Biomet emphasizes can't overcome the court's duty to evaluate – sua sponte, if need be – the question of whether it has jurisdiction to hear a case. *See* Int'l Union of Operating Eng'rs, Local 150 v. Ward, 563 F.3d 276, 282 (7th Cir. 2009).

Accordingly, I grant Ms. Harris's motion to lift the stay and consider her motions to substitute parties and to remand.

### B. Ms. Harris's Motion to Substitute Parties

Ms. Harris says her original complaint mistakenly named the wrong Distributors, and asks for leave to amend her complaint only to correct the error and substitute the parties that actually distributed her implant. When she filed her original complaint, she says, she couldn't easily determine who had distributed her Biomet hip implant because medical device distributor agreements are generally confidential and manufacturers don't always make clear which middlemen they work with in which areas. Ms. Harris's attorney explains that he knew some local entity distributed Ms. Harris's implant, so he

checked Biomet's website to determine who. Orthopaedic Resource Inc. and Orthopedics Inc. were listed as the distributors in reasonable proximity to the hospital where Ms. Harris had her surgery. Believing it likely that one of those two distributors was the one involved in Ms. Harris's 2006 surgery, Ms. Harris's attorney named both as defendants and hoped to figure out through discovery which actually provided her implant.

Only when Biomet provided declarations in connection with its notice of removal did Ms. Harris realize that the distributors that then worked with Biomet in that part of Florida weren't active there in 2006. Upon further investigation, her attorney identified another case in which Paul Haber was named as a defendant and which included affidavits making clear that Mr. Haber's distributorship territory included Sarasota County from 1999 to 2007. Based on that case – and on publicly available testimony from Mr. Haber in other cases – Ms. Harris now believes that Mr. Haber and Orthodynamics were involved in distributing her implant. She seeks leave to replace Orthopaedics Resource Inc. and Orthopedics Inc. with Mr. Haber and Orthodynamics, leaving the rest of the allegations in her complaint unchanged.

Biomet objects to substituting the correct Distributors, arguing that the proposed amendment would defeat subject matter jurisdiction and so should be carefully scrutinized under 28 U.S.C. § 1447(e). Ordinarily, a federal court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. Proc. 15(a)(2). When a plaintiff seeks to amend after removal by joining non-diverse

defendants, granting leave to amend would destroy the court's subject matter jurisdiction so the court "may deny joinder, or permit joinder and remand the action" to state court. 28 U.S.C.A. § 1447(e). "A district court has discretion to permit or deny post-removal joinder of a nondiverse party, and the court should balance the equities to make the determination." Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 759 (7th Cir. 2009). Those equities to be weighed include "(1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations." Id.

Biomet insists that Ms. Harris's proposed amendment must be carefully scrutinized under § 1447 because it would defeat diversity, but the court isn't persuaded that § 1447 applies. Unlike the typical situation in which a plaintiff originally names only out-of-state defendants and then belatedly tries to add in-state defendants after removal, Ms. Harris included in-state defendants in her original state court complaint – she just included the wrong ones by mistake. Ms. Harris seeks leave to replace one set of Florida defendants with another, so the amendment wouldn't destroy the court's diversity jurisdiction.

Even if this amendment is considered under § 1447 rather than the liberal standard of Rule 15, Ms. Harris has shown good cause to permit the joinder. Whatever Ms. Harris's motive in originally naming in-state defendants, the motive behind the amendment is simply to remedy a case of mistaken identity.

The request is also timely, as Ms. Harris moved to amend her complaint and substitute parties only four days after Biomet's removal motion put her on notice that she had accused the wrong Distributors. Ms. Harris will be significantly injured if joinder isn't allowed, because an oversight as to the identity of her implant distributor will cause her to both lose any potentially valid claims she might have against the Distributors and lose her access to the forum of her choice.

Biomet insists that the initial mistake Ms. Harris made in naming the wrong Distributors proves her claims against them aren't legitimate; if she truly cared about suing the Distributors, she would have double checked to make sure she was naming parties actually involved in the sale of her implant. But even if Ms. Harris's attorney could have and should have exercised more care when identifying the seller of her implant, that doesn't prove that any claim against the Distributors is necessarily a hollow artifice meant only to defeat diversity jurisdiction. Biomet also points to Ms. Harris's ability to quickly correct the mistake and identify the correct Distributors without discovery as soon as Biomet moved to remand, arguing that this shows Ms. Harris neglected to conduct even a minimum of due diligence before filing her state court complaint. Ms. Harris's counsel has adequately explained how the mistake happened and quickly corrected it as soon as it was brought to his attention. Biomet's speculation as to Ms. Harris's motives in naming the Distributors isn't supported by anything in the record.

Accordingly, I am granting Ms. Harris's motion for leave to substitute parties. When considering Ms. Harris's motion to remand, I will treat her complaint as if it named the correct Distributors involved in selling her hip implant, namely Mr. Haber and Orthodynamics.

C. Motions to Remand

All three plaintiffs' have moved to remand, arguing that there isn't complete diversity of citizenship. For diversity purposes, the plaintiffs and Distributors are Florida citizens, and the Biomet defendants are Indiana citizens. The defendants removed this case to federal court on the argument that the Distributors' citizenship should be disregarded for diversity purposes, because they were fraudulently joined in light of the plaintiffs' inability to prevail on any claim against them. The plaintiffs argue that removal was improper, because they have valid claims against the Distributors in state court joinder wasn't fraudulent.

For a federal court to have jurisdiction over a suit based on diversity, there must be complete diversity of citizenship – no defendant can share the citizenship of any plaintiff. 28 U.S.C. § 1332(a). A plaintiff can't fraudulently join a non-diverse defendant solely for the purpose of destroying diversity jurisdiction. Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 763 (7th Cir. 2009). "Fraudulent" in this context doesn't mean bad faith on the plaintiff's part; it means that the claims against the non-diverse defendant have no realistic

chance of success. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). To decide whether joinder was fraudulent, a court must ask whether, "after resolving all issues of fact and law in favor of the plaintiff . . . there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d at 764 (internal quotation marks omitted). The party seeking removal – or, as here, resisting remand – bears the heavy burden of showing that joinder was fraudulent. Id. at 763. If the removing defendant meets that heavy burden of demonstrating fraudulent joinder, the district court "may disregard the nondiverse defendant" for jurisdictional purposes, such that the fraudulent joinder doctrine acts as "an exception to the requirement of complete diversity." Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013) (internal quotation marks omitted).

In deciding whether a defendant has been fraudulently joined, a court isn't limited to the pleadings and may consider summary judgment-type evidence such as affidavits. Millman v. Biomet Orthopedics, Inc., No. 3:13-CV-77 RLM-CAN, 2013 WL 6498394, at *2 (N.D. Ind. Dec. 10, 2013); Siegel v. H Group Holding, Inc., No. 07 C 6830, 2008 WL 4547334, at * 3 (N.D. Ill. Apr. 9, 2008) ("[A] limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case."). The fraudulent joinder analysis requires a district court to apply state law to determine whether the plaintiff would have any reasonable possibility of success against the non-diverse

defendant in state court. Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d at 764. The parties agree that Florida law governs this case.

The plaintiffs argue that removal was improper because product distributors can be held strictly liable for injuries caused by defective products under Florida law. They insist that they could conceivably prevail in a suit against the non-diverse defendants in Florida courts, so the Distributors weren't fraudulently joined and complete diversity is lacking.

*Biomet's equitable arguments*

, Biomet's says I needn't even reach the merits of the fraudulent joinder as to Ms. DeJesus and Ms. Taranto, because they should be barred from challenging the court's jurisdiction for equitable reasons. Ms. DeJesus and Ms. Taranto previously tried to settle their cases, and even moved for the court to enforce their purported settlements when the agreement with Biomet fell through. According to Biomet, the doctrines of waiver, judicial estoppel, and equitable estoppel all bar the plaintiffs from moving for remand; having purposely invoked the court's jurisdiction in trying unsuccessfully to have their settlement judicially enforced, the plaintiffs have lost the right to challenge that jurisdiction once their enforcement efforts failed.

This argument runs aground on the bedrock principle that federal courts are courts of limited jurisdiction and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant

thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Even if the parties don't address the issue of subject matter jurisdiction, a federal court has a duty to evaluate sua sponte whether it has jurisdiction to hear a case. *See* Int'l Union of Operating Eng'rs, Local 150 v. Ward, 563 F.3d 276, 282 (7th Cir. 2009). Because parties can't expand this court's subject matter jurisdiction even by explicit consent, it naturally follows that they can't do so indirectly through waiver, estoppel, or other equitable considerations.

Biomet concedes that "waiver and estoppel are themselves insufficient to confer federal subject-matter jurisdiction where it would otherwise be lacking" but suggests that it's still relevant that the plaintiffs accepted jurisdiction when it suited them and have now reversed course. Biomet makes no attempt to explain what that relevance is –if subject matter jurisdiction is lacking, nothing the parties do or fail to do can bring a case within the constitutional and statutory power of an Article III court. Tellingly, the only case Biomet cites in support of its position is a half-century old and not binding on this transferee court: Di Frischia v. N.Y. C. R. Co., 279 F.2d 141, 144 (3d Cir. 1960). In Di Frischia, the court refused to let party that had stipulated to jurisdictional facts later withdraw that stipulation and challenge federal jurisdiction. That's not the case here, as the plaintiffs never affirmatively stipulated that jurisdiction existed; they simply didn't challenge it until their attempt to enforce the settlement fell through. More importantly, the Seventh Circuit has explicitly declined to adopt Di Frischia's reasoning. *See* Sadat v. Mertes, 615 F.2d 1176, 1189 (7th Cir. 1980)

(noting that Di Frischia "has been ignored, criticized, or limited to its facts and distinguished by the federal courts."). In this circuit, the law is clear that equitable doctrines like waiver and estoppel have no bearing on a court's jurisdictional inquiry. *See* Moore v. Olson, 368 F.3d 757, 759 (7th Cir. 2004) ("Defendants are entitled to waive any shortcomings in venue or jurisdiction over the person…[d]efects in subject-matter jurisdiction, however, may not be waived or forfeited."); Sadat v. Mertes, 615 F.2d at 1188 (noting that "jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or estoppel.").

*Fraudulent joinder*

Because Biomet's equitable arguments are irrelevant to the issue of subject matter jurisdiction, I turn to the merits of the fraudulent joinder inquiry. The central question is whether the plaintiffs have a reasonable probability of prevailing against the Distributors on any of their claims. They do. The plaintiffs' complaints adequately allege a colorable strict product liability claim against the Distributors under Florida law.[1]

While originally limited to the manufacturer of a product, "Florida courts have expanded the doctrine of strict liability to others in the distributive chain

---

[1] Because the strict liability claims are colorable as to the Distributors, I don't reach the parties' arguments as to whether the failure to warn claims are also colorable.

including retailers, wholesalers, and distributors." Samuel Friedland Family Enterprises v. Amoroso, 630 So. 2d 1067, 1068 (Fla. 1994). Biomet emphasizes that the Distributors never actually bought or took title of the implants, acting only as middlemen to deliver the implants to hospitals. A plaintiff seeking to hold a product distributor strictly liable for a product defect "need not prove the defendant was ever in physical possession" but must establish that the distributor "possessed some element of control over the allegedly defective product." Devore v. Howmedica Osteonics Corp., 658 F. Supp. 2d 1372, 1379 (M.D. Fla. 2009) (internal quotation marks omitted). In determining whether an "element of control" is present, courts consider "whether the person or entity placed the product in the stream of commerce, is in a position to control the risk of harm a product might cause once put into the stream of commerce, or either created or assumed the risk of harm for the defective product." Rivera v. Baby Trend, Inc., 914 So. 2d 1102, 1104 (Fla. Dist. Ct. App. 2005).

Contrary to Biomet's arguments, the plaintiffs have alleged a sufficient element of control to state a colorable claim against the Distributors under Florida law. All three plaintiffs allege unequivocally that the Distributors placed the implants in the stream of commerce by arranging their sale to hospitals and doctors. According to the complaints, the Distributors acted as Biomet's local representatives with regard to the implants in question, selling, marketing, and distributing the implants for profit. That the Distributors had no hand in designing the implants and might not have known of their defects isn't

-14-

dispositive. While the plaintiffs don't allege that the Distributors ever took title to the implants or physically possessed them, Biomet doesn't cite any Florida authority suggesting that taking title is dispositive of – or even relevant to – to the question of whether a retailer or distributor had sufficient control over the product to be held strictly liable for its defects. Instead, taking an active role in marketing and selling a product appears to be enough for Florida courts. *See* id. at 1105 "holding that retailer of strollers could be held liable for defects, because "[e]ven though [the retailer] never had actual possession of the stroller" it "was the actual seller of the product, marketed the product… and accepted payment for the product.").

Strengthening this conclusion, Florida district courts have consistently held that medical device distributors can be strictly liable for product defects and have granted remand motions over defendants' fraudulent joinder objections. *See, e.g.*, Barnes v. Bayside Orthopaedics, Inc., No. 8:11-CV-2827-T-30EAJ, 2012 WL 162368, at *2 (M.D. Fla. Jan. 19, 2012) (granting motion to remand where complaint alleged that distributor sold and marketed medical device, because "[e]ntities that play an active role in promoting a particular product within the chain of distribution to the general public are strictly liable for any defect in the product."); Martin v. Medtronic, Inc., No. 5:11-CV-144/RS-CJK, 2011 WL 2473318, at *1 (N.D. Fla. June 22, 2011) (granting motion to remand, because "even though [the distributor] never took possession of the insulin pump, its role in the situation was part of the 'distributive chain.'"). In

fact, a Florida federal district court recently remanded a Biomet M2a-Magnum hip implant case virtually identical to these ones, holding that joinder of some of the same Distributors named here wasn't fraudulent because Florida law allows strict liability claims against distributors under these circumstances. *See, e.g.*, Zaremba v. Orthopedics, Inc., No. 8:14-CV-1016-T-33TGW, 2014 WL 3057400, at *3 (M.D. Fla. July 7, 2014) (holding that the plaintiff "has made a possible, colorable claim against the Non–Diverse Distributor Defendants under Florida strict liability law by alleging that the Distributor Defendants are part of the chain of distribution for defective M2a–Magnum Metal–on–Metal hip components.").

Finally, the plaintiffs point to three other cases in this MDL docket in which Florida-based plaintiffs sued the same Distributors at issue here; in those three cases, Biomet stipulated to remand and the cases were immediately returned to the Florida courts. *See* Paluzzi v. Orthopedics, Inc. et al., Case No. 3:14-CV-1543-RLM (N.D. Ind. 2014); Silberg v. Orthopedics, Inc. et al., Case No. 3:14-CV-1544-RLM (N.D. Ind. 2014); Moody v. Orthopaedic Resource, Inc. et al., Case No. 3:14-CV-1529-RLM (N.D. Ind. 2014). In one of those three cases, Biomet's stipulation came in lieu of a response brief after the plaintiff moved to remand based on exactly the same arguments the plaintiffs raise here – namely, that the Distributors are strictly liable for product defects under Florida law and therefore not fraudulently joined. Those stipulations aren't an admission of any sort by Biomet that this court lacks jurisdiction over any cases that name Florida

distributors. But Biomet's ready agreement to remand in those cases suggests that returning Biomet to Florida might not be so prejudicial.

Biomet bears a heavy burden of proving joinder was fraudulent by showing that the plaintiffs couldn't possibly prevail against the Distributors in state court. It hasn't met that burden. Because joinder of the Distributors wasn't fraudulent there isn't complete diversity of citizenship and the court lacks jurisdiction over these cases.

D. Motions to Sever Dispensable Defendants and for a Protective Order and Stay

In the event that I decide the Distributors weren't fraudulently joined, Biomet asks that I exercise my discretion to sever the non-diverse defendants pursuant to Federal Rule of Civil Procedure 21. Biomet relies on a court's power to sever dispensable defendants at any time, even if doing so is necessary to retain diversity jurisdiction. *See* Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837 (1989); *see also* Dexia Credit Local v. Rogan, 602 F.3d 879, 883 (7th Cir. 2010) ("Under Rule 21, a district court can dismiss dispensable, nondiverse parties either before or after a final judgment."). Biomet suggests that severance is desirable because it would allow the plaintiffs' claims against Biomet itself to remain in this MDL while claims against the Distributors would be remanded to state court.

I disagree with Biomet's interpretation of Rule 21 and Newman-Green, which would utterly eviscerate the concept of complete diversity. As Biomet would have it, a federal court could create subject matter jurisdiction from thin air in any case in which a plaintiff made the mistake of suing at least *one* diverse defendant, essentially turning the requirement of complete diversity into one of minimal diversity. This can't be so; "[f]ederal courts are courts of limited jurisdiction" and "cannot create jurisdiction where [they] have none." Healy v. Metro. Pier & Exposition Auth., 804 F.3d 836, 845 (7th Cir. 2015). When a plaintiff chooses to file valid state law claims in state court against a set of defendants not completely diverse from the plaintiff, the federal courts have no constitutional or statutory power to seize control of the case. To exercise the Rule 21 severance power in situations like this "would be to allow the exception Newman–Green provides to swallow Fed.R.Civ.P. 17 & 19 and the complete diversity requirement." Sta-Rite Indus., Inc. v. Allstate Ins. Co., 96 F.3d 281, 287 (7th Cir. 1996).

Even if the authority existed, severance wouldn't be appropriate because the equities weigh heavily against severing all non-diverse defendants just to create diversity jurisdiction. Biomet insists that severance wouldn't prejudice the plaintiffs, but it's hard to see why; the plaintiffs would have to bear the cost and difficulty of litigating a state case and a federal case hundreds of miles away in parallel despite the two concerning exactly the same underlying facts. Biomet suggests that the plaintiffs won't be prejudiced because in reality they will simply

drop the claims against the Distributors and proceed solely in this MDL, but that presumes the truth of Biomet's unsupported theory that the plaintiffs have no real interest in suing the Distributors and only named them to destroy diversity. As already noted, Florida law permits the plaintiffs to sue – and recover from – the in-state Distributors. I decline Biomet's invitation to speculate about the plaintiffs' motives in naming valid defendants against whom the law gives them a remedy. Accordingly, I deny Biomet's motions to sever the non-diverse defendants.

Finally, each plaintiff has moved for a protective order and stay, asking that I exempt her from the upcoming MDL-wide discovery deadlines and stay her case pending resolution of the remand motions. Because I am granting the motions to remand, the MDL deadlines no longer apply to the plaintiffs and their cases will return to Florida state court. Accordingly, the motions for protective order and stay are moot.

III. CONCLUSION

For these reasons, I:

- GRANT Ms. Harris's motion to lift the stay (Doc. No. 64 in Cause No. 3:13-CV-1359);
- GRANT Ms. Harris's motion to substitute party (Doc. No. 10 in Cause No. 3:13-CV-1359);

- GRANT all three plaintiffs' motions to remand (Doc. No. 11 in Cause No. 3:13-CV-1359, Doc. No. 111 in Cause No. 3:14-CV-1434, and Doc. No 115 in Cause No. 3:14-CV-1505);

- DENY Biomet's motions to sever dispensable defendants (Doc. No. 157 in Cause No. 3:13-CV-1359, Doc. No. 147 in Cause No. 3:14-CV-1434, and Doc. No 152 in Cause No. 3:14-CV-1505); and

- DENY AS MOOT the plaintiffs' motions for a protective order and stay (Doc. No. 165 in Cause No. 3:13-CV-1359, Doc. No. 155 in Cause No. 3:14-CV-1434, and Doc. No 160 in Cause No. 3:14-CV-1505).

SO ORDERED.

ENTERED: July 18, 2016

/s/ Robert L. Miller, Jr.
Judge
United States District Court